TIMOTHY COURCHAINE
United States Attorney
District of Arizona
MARIA R. GUTIERREZ
Arizona State Bar No. 026659
BRANDON BROWN
Arizona State Bar No. 028892
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Maria.Gutierrez@usdoj.gov
Email: Brandon.Brown@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Roani Hernandez Jr.,<br><br>Defendant. | CR-24-1820-05-PHX-DJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

For the reasons below, the United States hereby recommends that the Defendant, Roani Hernandez Jr., be sentenced to eight months of imprisonment to be followed by two years of supervised release.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    FACTS

In April 2023, Homeland Security Investigations and the Bureau of Alcohol, Tobacco, Firearms and Explosives began investigating co-defendant Jorge Adan Garcia Martinez ("Martinez") for his involvement in the straw purchasing of firearms from federally licensed firearms dealers (FFL) in the Yuma-area and the smuggling of firearms

to *Los Salazares*, a violent faction of the Sinaloa Cartel in Mexico.[1]

The investigation showed that between April 2023 and June 2024, Martinez obtained about 40 firearms destined for Mexico. Martinez used individuals like Juan Carlos Yanez Molina ("Molina"), who was charged separately, and co-defendants Carlos Eduardo Diaz-Barba ("Diaz") and Jonathan Daniel Hernandez Noriega to purchase firearms from FFLs in the Yuma-area and to smuggle those firearms into Mexico. Individuals like the Defendant and co-defendant Jose Guadalupe Cota Garcia ("Cota") were recruited by others to buy firearms for Martinez.

*June 21, 2024: Seizure of Five Firearms at the Port of Entry in San Luis, Arizona*

On June 21, 2024, law enforcement was conducting surveillance at Sprague's Sports, a Federal Firearms Licensee (FFL) located in Yuma, Arizona, in connection to the purchase of firearms by the Defendant. The Defendant was driving a red Toyota Rav 4 ("Toyota Rav").

The Defendant purchased two Glock 44 pistols at Sprague's Sports. After the purchase, the Defendant drove to San Luis, Arizona. Agents observed the Toyota Rav enter a McDonald's parking lot in San Luis, and park parallel to a Chevrolet Astro ("Chevrolet Astro"). Agents observed the Defendant transfer what appeared to be firearm cases into the Chevrolet Astro. Agents later determined that Diaz was the driver of the Chevrolet Astro. After a short time, both the Defendant in the Toyota Rav and Diaz in the Chevrolet Astro departed the McDonald's parking lot.

The Defendant drove the Toyota Rav northbound toward Somerton while the Chevrolet Astro headed southbound toward Mexico. HSI agents provided Custom and Border Protection officers (CBP) at the port of entry in San Luis, Arizona, with a description of the Chevrolet Astro and notified CBP that the vehicle could contain firearms. CBP officers interdicted the Chevrolet Astro as it traveled on the outbound vehicle lanes at the port of entry in San Luis, Arizona. The vehicle was escorted to secondary vehicle

---

[1] The information in this section was disclosed to the Defendant in discovery.

inspection. In secondary inspection Diaz provided a negative customs outbound declaration, which included denying that he was exporting firearms, ammunition, or more than $10,000 U.S. currency or any other monetary instruments. CBP officers searched the Chevrolet Astro and found five firearms and seven magazines. The firearms and ammunition were hidden in the driver's side panel. The firearms and ammunition were seized.

Simultaneously, agents stopped the Toyota Rav. The Defendant was detained. The Defendant admitted he purchased firearms for others in exchange for $100 per firearm that he purchased. He admitted he purchased the firearms that were seized from the Chevrolet Astro and said that he purchased three other firearms for the same person in January 2024. He denied knowing that the firearms were going to Mexico. He also denied knowing Diaz, who was the individual to whom he transferred the firearms, and added that all he was told was where to meet him. In all, the Defendant said he purchased about 200 firearms for others. The Defendant had a semi-automatic pistol with him when he was detained. He voluntarily forfeited the firearm. He was released.

The Defendant and the co-defendants were indicted on November 5, 2024. He was arrested on December 3, 2024. He is scheduled for sentencing on January 26, 2026.

II.     PLEA AGREEMENT

The Defendant pleaded guilty to Count 15 of the indictment, Material False Statement During the Acquisition of a Firearm. The parties stipulated that the Defendant's sentence would not exceed the low-end of the Defendant's guideline range and that he was a minor participant. The United States agreed to recommend a reduction for acceptance of responsibility and to dismiss the remaining count at sentencing.

III.    PRESENT INVESTIGATION REPORT

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). The

Sentencing Guidelines range is not presumed to be reasonable but instead is only one of the § 3553(a) factors to be considered by the Court. *Id.*

Probation calculates the Defendant's base offense level at 12. (PSR ¶ 40.) After adjustments for the number of firearms involved in the offense and his role, the Defendant's adjusted offense level is 14. (PSR ¶ 45.) After a reduction for acceptance of responsibility, Probation calculates the Defendant's offense level at 12, criminal history category (CHC) II (12 to 18 months). (PSR at 23.) Probation recommends a sentence of eight months to be followed by two years of supervised release. (*Id.*)

For the reasons below and pursuant to the plea agreement, the United States respectfully requests eight months, a below guidelines sentence, to be followed by two years of supervised release.

IV.    ANALYSIS OF SENTENCING FACTORS AND RECOMMENDATION

a.  History and Characteristics of the Defendant

The Defendant is 27 years old. (PSR at 3.) The Defendant has two misdemeanor convictions for failure to appear and possession of marijuana (PSR ¶¶ 51-52.) He was sentenced to terms of unsupervised probation and suspended sentences. (*Id.*) To his credit, he does not have other contacts with law enforcement. Additionally, the Defendant has maintained steady employment and appears to have plans to become a certified welder. (PSR ¶¶ 68-72.) He has done well on pre-trial release, and he does not appear to have ongoing substance abuse issues. Therefore, this factor favors a sentence at the low-end or below the Defendant's guideline range.

b.  The Nature and Circumstances of the Offense

Although the Defendant admitted to purchasing about 200 firearms for others in exchange for payment, he purchased five firearms in connection to the instant offense and admitted to purchasing three other firearms for the same individual who recruited him. Even though the Defendant denied the firearms were going to Mexico, the firearms were interdicted in a vehicle as it was exiting the United States the same day that the Defendant purchased the firearms. The offense itself is very serious as firearms smuggled from the

United States fuel the extreme violence perpetuated by the drug cartels in Mexico. Therefore, the Defendant's involvement in conjunction with the seriousness of the offense favors a sentence near the low-end.

c.  The Need for Adequate Deterrence

Title 18, United States Code, Section 3553(a) expressly provides for the court to consider general deterrence in making its sentencing determination.  Section 3553(a)(2)(B) states that "[t]he court, in determining the particular sentence to be imposed, shall consider the need for the sentence imposed to afford adequate deterrence to criminal conduct."

The Defendant was involved in the purchase of eight firearms.  He was a straw purchaser.  The Defendant committed the offense for payment.  Although the Defendant denied knowledge that the firearms were headed to Mexico, the firearms were in fact headed to Mexico to be used by members of a drug cartel.  As mentioned above, the Defendant was a minor participant in the offense.  Purchasing firearms for others is a serious and dangerous offense as many of these firearms are used to commit acts of violence in the United States and, in this instance, in Mexico.  A sentence of eight months, while below guidelines, should send a message to other would-be straw purchasers and smugglers that this is a serious offense.  It should also deter the Defendant from getting himself involved in future criminal activity as he has received minimal punishment for past offenses and that punishment has not served as a deterrence.

d.  Not Create Unwarranted Disparity Among Defendants

Title 18, United States Code, Section 3553(a)(6) states that in formulating a sentence, a court should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  In *United States v. Saeteurn*, the court noted that "sister circuits generally agree that 'Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case.'" *Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007) (*citing United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).  *Saeteurn* involved a drug conspiracy with multiple co-defendants.  The Ninth Circuit, in affirming

the sentence, found that the district court's comparison of the codefendants was appropriate because it helped the district court understand the nature and circumstances of the offense and each defendant's role and culpability in the conspiracy to achieve appropriate sentences under § 3553(a). *Saeteurn*, 504 F.3d at 1181-82.

The Defendant is the third defendant on this indictment to be sentenced. Molina, who was charged separately, and Cota were purchasing firearms for Martinez in exchange for payment. Molina purchased about 25 firearms for Martinez. Molina was sentenced to 18 months of imprisonment. (PSR at 2.) Cota purchased ten firearms, and he was sentenced to 10 months of imprisonment. Cota was a minor participant like the Defendant. Unlike the Defendant, Cota did not have criminal history, but he struggled on pre-trial release and had substance abuse issues.

Noriega was involved in the purchase of 17 firearms that were headed to Mexico. He was a straw purchaser, and he drove Cota to buy firearms on December 15, 2023. Martinez said that Noriega was purchasing firearms for him. Unlike the Defendant, Noreiga was an average participant and had more criminal history. He was sentenced to 36 months of imprisonment.

The Defendant is more like Cota than to Molina or Noreiga. He purchased less firearms than Cota, but he has more criminal history than Cota. Unlike Cota, the Defendant is doing well on pre-trial release and had maintained steady employment. He also does not appear to have ongoing substance abuse issues. Therefore, a sentence of eight months, a significant for the Defendant but below guidelines sentence, is warranted.

Currently, Martinez is pending trial. Diaz is pending sentencing.

Based on the above, the United States respectfully requests a sentence of eight months, a below guidelines sentence, to be followed by two years of supervised release. Such a sentence considers the Defendant's limited involvement in the offense, his minimal criminal history, his lack of ongoing substance abuse issues, steady employment, and the danger that these firearms represent to the community.

## V.    Conclusion

For the above reasons, the United States respectfully requests a sentence of eight months, a significant but below guidelines sentence.  The government also requests two years of supervised release.

Respectfully submitted this 20th day of January, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Maria R. Gutierrez*
MARIA R. GUTIERREZ
BRANDON BROWN
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Matthew William Bartz, Attorney for Defendant.

*s/Maria R. Gutierrez*
U.S. Attorney's Office